# M.

MACKENZIE (UNITED STATES v.). See Case No. 18,313.

McQUEWAN (BLOOMER v.). See Case No. 18,242.

MADDOX (ASHLEY v.). See Case No. 18,227.

## Case No. 18,309.

### MANIER v. TRUMBO.

[Monroe, C. C. (Ky. Dist.) 67.]

Circuit Court, D. Kentucky. Sept., 1855.

JURISDICTION OF COURTS—COLLATERAL ATTACK—ATTACHMENT FROM STATE COURT—WRONGFUL SEIZURE BY SHERIFF—REPLEVIN IN FEDERAL COURT.

[1. The question of jurisdiction over any particular case must be decided, in the first instance, by the court whose judicial action is first invoked. The question arises immediately upon the application for the original or first process in the action, and is necessarily decided in favor of the jurisdiction at the time when the process is issued, whether issued by the judge or the clerk. And it is thereafter also necessarily decided, by implication, preliminary to every order, sentence, or mandate of the writ; and every order and process exhibits on its face a decision of the court that it is made and awarded by competent authority.]

[2. When it is within the general jurisdiction of a court in a proper case to issue a writ, or make an order, which it has issued or made, but, in the particular case, the facts were not such as confer jurisdiction, such writ or order must be taken as valid and effectual, until quashed, reversed, or otherwise superseded by a tribunal competent to review and correct the error.]

[3. An order for the attachment of the property of the defendant in a personal action, in order to have it brought into the custody of the court, and subjected to whatever, after due proceedings, may be adjudged against the defendant, being within the general jurisdiction of the Kentucky circuit courts, under the Code of Practice of that state, the validity of such an attachment cannot be questioned by a federal court, in an action brought therein to replevy the property from the possession of the sheriff. The Kentucky court having necessarily decided, in issuing the writ, that a proper

case was presented for the exercise of its jurisdiction, the federal court has no authority to review that decision, and consequently must respect and give full effect to the writ.]

[4. An order for the attachment "of the property of" a defendant named, issued as a provisional remedy, prior to judgment, under the provisions of Code Prac. Ky. § 223, gives the sheriff no authority to seize property, which has been conveyed to another, on the ground that such conveyance was in fraud of creditors; and such a seizure, if made, does not carry the property into the custody of the court.]

[5. Where a sheriff, under the authority of a writ of attachment issued by a state court, seizes property not within the command of the writ, a third person, not a party to the suit, may (when the other requisites of federal jurisdiction exist) maintain a suit in replevin in a federal court to recover the property from the possession of the sheriff; and this notwithstanding the fact that the state laws provide a mode in which he may intervene in the state court for the purpose of asserting his right to the property.]

At law.

J. Harlan, Atty. Gen., for plaintiff.
Morehead & Brown, for defendant.

MONROE, District Judge. 1. Plaintiff's action: This action is replevin by the plaintiff, a citizen of the state of Illinois, against the defendant, a citizen of Kentucky, to recover five slaves of the plaintiff's of the aggregate value of $2,300.

2. Defendant's possession of the property: It appears that, some time prior to the commencement of this action, Henry G. Poston and Wm. Winn had commenced a suit by petition in equity in the Clarke county circuit court against John Manier, Sr., John Manier, Jr., and some other defendants. It is alleged in the petition that the plaintiffs had some time before instituted an ordinary action in that court against the defendant John Manier, the elder, and Miller Cooper, on a demand for about $720; that this suit, on the application of the defendant Manier,

had been removed to the Fayette circuit court, where it remained undetermined; but that they, the plaintiffs, had recovered a judgment against this defendant John Manier, Sr., for about twenty-five dollars for their costs of a continuance of the suit. It was represented that the defendant Cooper was without property, and that since the last term of the Fayette circuit court John Manier, the elder, had sold, conveyed, and otherwise disposed of his property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder, or delay his creditors; that among other fraudulent transfers thus made by him was a pretended sale of a negro woman and children to his (the defendant's) son, John Manier, Jr., who was then trying to sell said slaves as his own property. They prayed the court to grant them an attachment against the property of John Manier, Sr., or so much thereof as would be sufficient to satisfy their original demand for the seven hundred and odd dollars, and the judgment and execution for costs they had obtained at the last term of the Fayette circuit court. The plaintiffs represented that the other defendants were indebted to the defendant Manier, the elder, and asked an attachment of the debts due by them to him, and that they be enjoined from paying the same to him until the further order of the court. The petition is concluded with a prayer that the rights of the petitioners be protected, and for all proper relief. On this case the plaintiffs obtained an order of the court for "an attachment and injunction in accordance with the prayer of the petition," and the process was issued accordingly. The attachment commanded the sheriff to "attach the property of John Manier, Sr., not exempt from execution, in your county, or so much thereof as will satisfy the claim of the plaintiffs in this action," etc.; and to summon the garnishees, etc. It was directed to the sheriff of Bath county. David Trumbo was that sheriff, and, it having come to his hands, he, by the directions of the plaintiffs, and the supposed command of the writ, seized the slaves which it had been alleged in the petition had been fraudulently sold and transferred by the defendant John Manier, the elder, to his co-defendant John Manier, Jr., and thus Mr. Trumbo took and had the slaves in his possession.

3. Plaintiff's replevin: But a stranger to all this proceeding asserts that he was the owner of the slaves, and the question will be, what was the predicament of the property in the hands of Mr. Trumbo? Wesley H. Manier, a citizen of Illinois, no party to the suit in the state court, nor mentioned in the attachment or other process, in this state of things instituted in this court the present ordinary action of replevin against David Trumbo for these slaves. The plaintiff in his declaration, filed before the impetration of this writ, after the statement of his ownership of the property in the ordinary form,

alleged that David Trumbo, the defendant, not adding his quality of office, wrongfully took and detained his slaves, described by their individual names and value, and still detained them; and thereupon, without showing how or under what color the wrong was committed, prayed the replevin of the property and for his damages. The writ having been issued accordingly, the marshal, after having taken the proper bond for the security of the defendant, took and delivered the slaves to the plaintiff. Whereupon,—

4. Plea to jurisdiction, and retorno demanded: Mr. Trumbo returned the attachment to the state court with his answer thereto, that by the direction of the plaintiff he had seized these slaves, without saying whose property or in whose possession found, but that they had been taken from him by the marshal on this writ of replevin; and, having thus answered the state court, he appeared here with its record, and pleaded these matters to the jurisdiction of this court; concluding with a prayer for the return of the property. The plaintiff demurred.

5. Defendant's position on demurrer: It was assumed in the argument by the counsel of the defendant that immediately on the seizure of the slaves by the defendant in his quality of sheriff, by his supposed authority under the attachment, they were in the custody of the state court, and thence inferred that this court had no cognizance of this action, afterwards commenced here to disturb such custody of that court. If the premise is true, the conclusion necessarily follows. It may be premised that the circumstances that this is a court of the United States and the Clarke circuit court a state tribunal is in no wise material to the question. If this action had been in the state circuit court of Bath, and this plea had been there pleaded, the question would have been exactly the same with this which is now here presented. But is it true that such was the predicament of the property? This must depend upon the answer to the question, was the seizure by the order of the court or the command of its process? If it was, then the act of the sheriff was the act of the court, and his apparent possession of the property thereby obtained was but as the custos for the court; and, in such case, the court not being subject to an action, he was not. But, if the sheriff acted without such command, his act of seizure was his own wrongful act, and the possession his own wrongful possession, which subjected him to the action of the party injured in any court having cognizance of such wrong. It would seem to follow that the jurisdiction of this court of the present action depends upon the interpretation of the terms of this writ of attachment, and upon this exclusively.

6. Question of jurisdiction retorted: There was a preliminary question suggested. The

counsel of the defendant was asked whether the question of jurisdiction might not be retorted, and the defendant required to maintain that the Clarke circuit court had cognizance of the cause in which it had awarded this writ returnable before itself. It had been agreed by the counsel that it should be considered that the record of the case on which that court acted was fully set forth in the plea, the question is therefore fairly presented and will be disposed of first in order. This question depends upon the law of Kentucky which prescribed the jurisdiction of the state court and regulated, or ought to have regulated, the proceedings found in this record.

7. Code of Kentucky Practice: But this class of law had been, shortly before these proceedings were commenced, all broken up, essentially altered, new modeled, in short codified, and by one act of the legislature compressed into a book. It will therefore be necessary to understand what is this new system. To this end we must recognize the preliminary dispositions of the Code, and comprehend its general provisions; and when this shall have been done, and not before, its particular provisions may be intelligibly applied to the subject of discussion. The act of legislation which enacted the book declared that it should be known as the "Code of Practice in Civil Cases in This State"; and it does direct every proceeding allowed in every class of case within its title. The only object of all proceeding in every such case is immediately mentioned by a term of the utmost extension, and thereupon a division thereof made which entirely exhausts the subject. "Section 1. This act shall be known as the Code of Practice in Civil Cases in this state. Sec. 2. Remedies in civil cases in the courts of this state are divided into two classes: (1) Actions; (2) special proceedings. Sec. 3. A civil action is an ordinary proceeding in a court of justice, by one party against another, for the enforcement or protection of a private right, or the redress or prevention of a private wrong. It may be brought for the recovery of a penalty or forfeiture. Sec. 4. Every other remedy in a civil case is a special proceeding."

There is here a division of remedies into two classes, but the subject of our discussion will be found in the first class, and in this only. All the wrongs suffered and apprehended by the plaintiff in this attachment are redressed or prevented by certain conservative or provisional orders and process in the ordinary action for the principal demand, specially provided as incident thereto, and significantly denominated "Provisional Remedies," for the accomplishment of the object of such action, and not by any of the species of procedure denominated "Special Proceedings," and classed in this second division of remedies. It is therefore with this action only we are here concerned.

"The forms of all actions and suits" theretofore in use were abolished, and a new form of action established "for the enforcement and protection of private rights, and the redress and prevention of all private wrongs," regardless of all former distinctions between either legal or equitable rights or remedies.

This is an action by petition to the court, and a summons thereon for the defendant or person concerned in the defense in every case, whether the proceedings be in personam or in rem, or both a person and thing are the reus. There are two forms of proceeding, one called an "ordinary" the other the "equitable." In one the petition is headed "Petition" merely; in the other, "Petition in Equity." But the plaintiff has his election which of the two he will adopt, except when his case has been before exclusively cognizable in equity or was of common-law jurisdiction, and the defendant appears and interposes his objection to the mode adopted; and on this objection a singular preference is given to the equity docket. If the proceeding had been erroneously commenced in the ordinary or common-law mode, the defendant has a right on his mere motion to have it transferred to the equity docket, but if, on the contrary, the plaintiff had erroneously elected the equitable mode of proceeding, the defendant cannot have the mode of procedure changed, but must submit unless he present in his answer, on oath, a defense on which he is entitled to a trial by jury. So that in every case one party or the other may elect the equitable mode of procedure unless the defendant shows that he has a right to trial of an issue by a jury, and insists on such right. And where the action has been commenced by ordinary proceeding, and remains on that docket, the plaintiff may have every issue, which before the adoption of the Code was exclusively cognizable in chancery, tried in the mode prescribed in cases of equitable proceedings. And where in such case all the issues are such as had been theretofore cognizable in chancery, though none of them were exclusively so, the defendant may have them tried in this mode.

It is manifest that it was the plan to give to the equitable mode of proceeding the preference where ever it was possible. The constitution had reserved the right of trial by jury, and a method had to be provided for such trials; but in prescribing this method the equitable mode of proceeding is departed from so far only as was absolutely necessary to accomplish this object, and, that the provisions of the law for this purpose might not have a more extended effect, it is declared that where the issues of fact theretofore cognizable in equity occurred in a cause commenced by ordinary proceeding, such issues might be tried in the mode of equitable proceeding on the mere motion of the plaintiff or defendant, without having

the cause transferred to the equitable docket, or changing the form or mode of proceeding in any other respect. And this seemed to produce something like a common-law suit tried by the court of equity; but the fact is, this change of the mode of the trial, divested the case of its only common-law characteristic, and made it a purely equitable cause. It thus appears that the trial by the court is not peculiar to the equitable mode of proceeding, and therefore it cannot distinguish such mode of proceeding into a class of actions. It is elsewhere provided that the court may whenever it thinks proper—as theretofore practiced—order an issue in an equitable cause to be tried by a jury. So that the trial by jury is neither universal nor simply peculiar to the action by ordinary proceeding; therefore it does not necessarily even contribute to constitute a class, and other material differences must be found before such a class can be formed. The fact is that this action of the Code, on whatever form of proceeding commenced, or conducted, or the trial is had, is essentially a suit in equity founded on the principles of the modern civil law. It is thus distinguished—by the number, complication, and shifting of the parties which is allowed—by the fact that the allegations of the several parties are all cast broad before the court, whereupon the proofs are immediately taken, after which the facts in dispute are contained by retrospection, and the proofs applied to the questions thus found—by the machinery employed—by its interlocutory orders, conservative acts, and process—by its trials by the court and its mode of trial by jury; and, finally, by its mode of relief, specific or remuneratory, remedial or protective, adapted to every case and every party. The parties to the action, plaintiffs and defendants, primary and secondary, or the rules in respect to them, are those of the court of equity, or civil law forum; and different—even in respect to the principal and indispensable parties—from the rules which govern absolutely the parties to the common-law action.

The plaintiff may be one who has either a legal or equitable right; and such plaintiff may have for the reus all the persons and things he may choose to have convened and arrested to answer his action, without the hazard of his cause by a misjoinder of parties. The defendants may be not only the thing demanded by the action and all the persons and things directly bound for the plaintiff's demand, but all the persons and property, in possession and in action, he expects to subject to the judgment he hopes to recover; and these defendants are all convened or brought before the court or into its custody, and consequently made subject to its action by the personal service of the summons, or an order entered on the record, warning the persons to appear and defend their rights, or by an attachment of the property itself by an officer of the court, or its delivery to such officer according to an order made in the cause. The process—actual or constructive and common to all cases, or principal and conservative and therefore only employed when necessary in consequence of the circumstances of a particular case—is exactly the same whether the mode of proceeding be equitable or ordinary. There is a diversity in the terms in which the defendant is required to appear and answer after the service of the process, but that is here unimportant. The persons thus made defendants on appearing to the action, thereupon defend themselves or the property in their possession or which they have an interest in defending, in the same mode on whatever docket the cause may stand. We have seen that all actions are commenced by the petition of the plaintiff. Every action whilst single is defended by either demurrer or the answer of the defendant. The plaintiff makes no express replication to the defendant's answer. He is understood to deny its affirmative allegations, and thus is made the issue. Plaintiff may demur to defendant's answer, which corresponds to setting down a cause in equity on bill and answer. But the defendant may turn on the plaintiff with his demand in reconvention or set-off, and whenever necessary call in other persons; and, making them defendants to such demands, have them brought before the court in the same mode the original defendants had been convened. In such cases the answer of the defendant, where no new party is introduced, and his petition when a third person is made a defendant, are in the nature of a cross-bill in equity. The cause is then double, and the plaintiff in the original action and the parties thus made defendants make their defense to this incidental action in the same mode a principal action is defended. What the plaintiff files is called his reply, but it is no other than an answer to the cross-bill. Thus are the issues made in every cause, however complicated it may become. The only altercations between any of the parties in respect to the facts is by petition and answer. Either may be amended.

Third persons still outstanding, whose rights are involved in the controversy, or whose possession of property is affected by any act of an officer under color of an order or process of the court, may intervene, assert their right, and submit it for discussion and decision; or oppose the actions had or threatened against their possession. The constituents of either class of such parties may be changed whenever found necessary, either from an error in the commencement of the proceedings or a casualty in the progress of the cause. Defendants may be added, struck out, and dismissed, and new persons or things substituted and added. An original plaintiff—even a sole plain-

tiff—may retire and a new actor be introduced in his stead; and yet the cause may be all conducted on what is called the ordinary mode of proceeding in opposition to the equitable. And in whatever mode the suit may have been commenced, on whatever docket it may stand, every order, process, and judgment, found in all the formulas of either the courts of equity or law, or their equivalents, may be entered and awarded either by the court, the clerk or a judge in each and every stage of the proceeding, from its institution to the final trial.

By these means every provisional remedy is afforded. The property in litigation or sought to be subjected to a demand is secured from waste or damage, and from being aliened or eloined, and may when necessary be sold and its proceeds held subject to the disposition of the court. The mode of proof is not material before us; but it is substantially the same in either mode of proceeding. Every party has the right to examine his adversary either on interrogatories or on the trial in open court, touching the like facts, and the only diversity between the modes of obtaining testimony is that in the ordinary the witness must be produced and testify before the jury when within the county or an adjacent county, and able to attend. Either the jury or the court may have a view of the premises, or the object in litigation referred to in the proofs, subjected to its inspection. The same machinery is employed by the court indiscriminately—the auditor, the master, the expert, the depositary, the receiver, or commissioner, as may be demanded by the circumstances of the litigation.

The several branches of the cause may be decided at different periods, either provisionally or finally. And in the final dispositions of the cause every form of judgment, decree, injunction, interdict, mandamus, or prohibition found in either the common-law court or civil-law forum may be adopted; or new forms hitherto unknown, may be devised, and all carried into execution by whatever order of process the exigency of the case may demand. These general dispositions of the Code will be sufficient.

It is manifest this action, announced at the opening of the work, is a suit in equity. It has all the distinctive characteristics of this class of proceedings in court. There is assigned in to all the remedies, provisional and final, afforded by the common-law actions, and every species of procedure known to courts of equity, and therefore it is in some sense mixed or compound; but it may be more properly said that the action at law has been merged and lost in the comprehensive equity action. The circumstance that the right of trial by jury, when demandable at common law, is preserved and a mode of proceeding prescribed for this purpose, does not make it neces-

sary to qualify this conclusion. This amounts to only the introduction of the jury into the machinery of the court of equity in certain classes of cases, and making its employment necessary when demanded by a party, whereas it was before discretionary with the chancellor. We have seen that nothing more was done.

But to proceed and apply what we have collected to our question. It is found that the idea of two courts (or a court with two sides to it), one with cognizance of one class of rights and wrongs, and with power to afford one species of remedy, and the other with jurisdiction of another sort of rights and wrongs, and with power to afford other remedies, is totally abolished. It follows that it is impossible that there can remain any such thing as an ancillary equity jurisdiction of one court, to be exercised to secure or promote the object of an action in another tribunal. Not only is there no occasion left for such jurisdiction, but it will be found that it is directed that every provisional remedy which a chancellor could afford in the exercise of his ancillary jurisdiction shall be allowed in not only the same court but in the very action whose object the proceeding is intended to conserve and promote, whether this action is conducted in the mode of an equitable or ordinary proceeding.

There are six several classes of provisional remedies prescribed in the Code,—arrest of the defendant, claim and delivery of personal property, attachment of property, injunction, appointment of receiver, and deposit of property. These it is supposed extend to all the cases provided for by the conservative acts of the civil law, accomplish all the objects of the coercive process in an action at common law, and include every provisional remedy afforded by a court of equity in the exercise of either its ancillary, or principal jurisdiction; and all these remedies are incidental to every action in which an occasion for them can occur; all may be had at the institution of a suit, or at any time before judgment, and therefore constitute a part of the proceedings in the action. We shall however have occasion to mention again the attachment only. It is allowed in several different cases and on a number of grounds; but we need mention only one—it will be sufficient to say of the others that they are all issued out of the court in which the action is being or has been brought, to which they are provisional.

The provisions in respect to this case are to this effect: "Sec. 221. The plaintiff in a civil action may at or after the commencement thereof have an attachment against the property of the defendant in the cases and on the grounds hereafter stated. (1) In the case of an action for the recovery of money." "Sec. 222. An order of attachment shall be made by the clerk of the court in which the action is brought." Whenever in the case just mentioned there is filed in his office an affidavit of the plaintiff showing the "nature of his claim,

that it is just, and the amount the affiant believes the plaintiff ought to recover"; that the defendant "has sold, conveyed or otherwise disposed of his property, or suffered or permitted it to be sold with the fraudulent intent to cheat, hinder, or delay his creditors." This attachment is against the defendant's property generally, and is executed against every species thereof not exempt from execution, corporeal or incorporeal. It is executed on a debt or demand by delivering to the debtor a notice thereof, and summoning him as garnishee to the action.

8. Code applied to defendant's case: Now it is manifest that the case of the plaintiffs in this attachment was simply the case which has been started out of the Code, and that their remedy against both the property of John Manier, the elder, and the debt owing to him by the other defendants was an attachment in the action by ordinary proceeding depending in the Fayette circuit court. There was no occasion whatever for an injunction forbidding the payment of the debt to Manier by the garnishees. Notice of the attachment to the debtors and citation of them to appear and answer in the action is an effectual seizure of the debt. The question then is, we have seen, had the Clarke circuit court jurisdiction to entertain this petition in equity—constituted of nothing but the materials for a mere provisional remedy incidental to the action by ordinary proceeding in the Fayette circuit court—and to thereupon award this process returnable before itself, and thereby constitute a second suit.

9. Question of jurisdiction retorted back: But that court did take cognizance of the cause and awarded the attachment—and the question occurs, was there not included in that act a decision that the court had jurisdiction?—which must be reviewed before the main question can be reached. If there was, then the question is, has this court the power to reverse that decision; and the question of jurisdiction is retorted back. This seems to be the case and it is proper that the preliminary question be first decided.

10. Province of courts: Every superior court of general jurisdiction has prima facie power to act upon all the persons and things within the territorial limits, and subject to the legislative power, of the government of which it is the organ. There is generally a local sphere of action prescribed for each tribunal; and the objects or subjects of the jurisdiction of each class of courts are designated in some mode by their organic law, and the jurisprudence they administer. But the question here occurs, how is this law to be applied to each case presented to the tribunals for judicial action and the jurisdiction of the court determined? There can be but one answer. The law must be applied and the question decided in the court where the judicial action is first invoked; and provisionally decided, even at the threshold of the court of the first instance. The question of the jurisdiction of the particular court occurs on the application for the original or first process in every action; whether such application is to the court or its clerk and is decided on by the clerk or the judge. It is afterwards necessarily decided preliminary to every order, sentence, and mandate of the court; a judgment upon it is implied in every such act, and every order and process exhibits on its face a decision of the court, that it is made and awarded by competent authority. It is not material whether the process is issued by the clerk on the direct and immediate order of the court or not: it is always as if by the court. In every case of the award of the process or the entry of an order which has such effect, it is either all right, in some respects wrong, or all wrong. It is only with the middle class we are concerned. If any writ or process is sued forth or prosecuted in any court of the United States or a particular state, whereby the person of an ambassador or other public minister of a foreign state received by the president of the United States may be arrested or imprisoned, such writ or process is null to all intents and constructions. This nullity of the writ is the consequence of the fact that no court had jurisdiction to award such process against a foreign minister in any case whatever which it is possible to present. In such and the like cases where the court has no jurisdiction to consider whether a sufficient case has been made out for its action or not, its whole action is all wrong and null for every purpose. But the order or process may be what the court had no jurisdiction to make, and send out for execution—on the facts or case before it—but which it had jurisdiction to make or award on a case which might have been presented for its action: in such cases the act of the court is not a nullity, nor its process void.

A capias in the common form issued on an indictment which charged no offense within the jurisdiction of the court, nor punished by any law, and which, if you choose, had never been found by the grand jury. "A true bill," will justify a sheriff or marshal in the arrest of the defendant. A writ of fieri facias issued in a cause wherein the plaintiff had shown neither the jurisdiction of the tribunal nor a cause of action in any court, to which the defendant had either appeared or been cited, and in which there had been in fact no form of judgment rendered, will justify the marshal or sheriff in not only seizing the goods of the defendant, but enable him to pass a good title to an innocent purchaser: and the reason in both these and all the like cases is, that the officer has no jurisdiction to review the decision of the court, made either by itself or its clerk, upon the case on which it acted in making the order and issuing the process; and therefore need not know what was such case; and all strangers must be allowed to

trust to the validity of such process. Every such process must be allowed its full operation until quashed, reversed, or otherwise superseded by a tribunal competent to review and correct the errors of the court whence it issued, and even after such reversal, and the writ has been quashed, what has been performed according to its command remains justified and in general valid and effectual. This tribunal is the court itself, under certain limitations, which made the order, or whose clerk issued the process without an express order in the particular case; or it is an appellate court with power to review the decisions of such court, not only for its errors in assuming jurisdiction in cases of which it had not cognizance, but for its errors committed in cases of which it had unquestionable jurisdiction.

No other tribunal, whether of the same or another government, can with any propriety review such decisions or hold for nought such an order or such a writ. It is said a court can act only on the persons and things before it, and that its judgments against the absent reus are null and ineffectual. The ancients supposed it was necessary for the parties to be in fact before the tribunal and in the physical power of its officers; and it is still supposed with us that all the parties to be acted on, whether persons or things, must be in some wise before the court. Hence, when this does not appear nor can be made out by any construction, the judgment may be ineffectual. But this nullity of the action of the tribunal results from an entirely different principle from that involved in this case: in the case supposed it is assumed there was no reus in the power of the court in any mode, and thence inferred that the court, having nothing within its power, had not acted, and therefore there was no judgment. Whereas, the present question is not upon the effect of a judgment against property: which might raise the question whether it had been effected in a mode or was in a position which subjected it to the jurisdiction of the court. The question is upon an order of the court for an attachment of the property of a defendant in a personal action, in order to have it brought into the custody of the court, and there, after due proceedings, subjected to what might be adjudged against the defendant; and the jurisdiction of the court to award such process in a proper case is unquestionable: therefore it can be objected against the attachment, only that the court had not jurisdiction of the cause, and therefore had not competent power to award the process. But it was adjudged by that court that it had jurisdiction of the cause. It had jurisdiction to make that decision, and this court has no jurisdiction to reverse that decision, and consequently must respect and give full effect to the process thereby awarded.

11. Aggression of courts and its consequence: It is supposed that this conclusion is sufficiently apparent on the direct argument, and that it is hardly worth while to state any other form of argument to confirm it; but a very few words will show that its contradictory would not only defeat the uniformity in the administration of justice to the extent of its operation, but would, if carried out, lead to consequences altogether intolerable. If this court can discuss and thereupon hold for nought, such an order and process of a state court, it might determine that the act of its officer in its execution had been a mere trespass, not only whilst the propriety of the process had remained unquestioned, or, when it might be afterwards adjudged in the state tribunal that it was not merely void, but only voidable, and was therefore a full justification of the officer, and that all he performed under it was valid and effectual, but even when it might be subsequently held by the state courts that the process was in all respects valid and regular.

This is however but a small portion of the evils which might result from the operation of such a principle. If it be necessary to show that the state court had jurisdiction of the case on which it awarded its process, pronounced its judgment, and directed its execution, actions might be maintained in this court by every alien and citizen of other states against the officers of the state on every case of an execution upon them or their property of a state process whether original, mesne, final, collateral, or incidental, where this court might be of opinion that the proceeding had been had on a case of which such court had not jurisdiction. This might be done notwithstanding the acts of such state magistrate were irreversible in any superior tribunal. This court might have before it actions by the convicts of the state prisons, common jails, and work houses, against their keepers, even by a person committed for a contempt of the court, and be called upon to examine the record of the judgment pronounced against them at the bar of the state tribunal, and thereupon to decide whether, on the case thus shown, such court was authorized by law to pronounce sentence. And if the courts of the United States considered such questions, the state courts might on the same principle have brought before them any person in the custody of the marshal arrested on a capias or warrant from a court or commissioner of the United States, on a charge of an offense against the United States, and if in its opinion the indictment or case otherwise shown on which the process issued was not sufficient, he might be discharged and set at large. And on the same principle a state court might have brought to its bar the criminal in a state prison suffering the penalty of his public offense, adjudged against him by a court of the United States on a full trial at its bar, and if in its opinion an error had

been committed in the construction of the constitution or an act of congress, the criminal might be set at large to defy the government and its tribunals. In the end, even persons committed for open contempt, resistance, and obstruction of the orders and process of the courts of the United States might be discharged from its custody, and thus maintained in their rebellion against all government and order. It cannot but be perceived that such cases would raise the question whether any color of office would exempt persons thus obstructing the process and defeating the judgments of the courts of the United States from the penalties denounced by the acts of congress against such offenders. But the subject will not be pursued. It had been supposed that the principle we have laid down was everywhere practically recognized: it is acted upon a thousand times every day, and it is impossible that its converse can ever obtain whilst men have common sense and judges are lawyers.

12. Term "defendant's property" in attachments: The only question then is, did the attachment command the sheriff to take these slaves? It did not do so by a term which designated them directly; and therefore the proposition, that it was done at all, can be established only by argument. The property only of John Manier, the elder, was what the sheriff was commanded to attach. If these slaves were the property of this Manier, then the sheriff was commanded to seize them—otherwise, not. The question then is, can this hypothesis be maintained? It is not averred in the plea, and nothing is found in the record which will supply the omission and warrant the assumption of the fact. It had been affirmed in the petition on which the attachment was obtained, in effect that the slaves had been the property of John Manier, the elder, and though it was averred that he had transferred them to the young Manier, yet it was charged that the sale was fraudulent against them, the creditors of the vendor; and, this record was not only referred to in the plea, but it was agreed by the counsel that this question, on the plaintiff's demurrer, should be considered exactly as if the record had been fully transcribed in the plea. The averments in the pleadings in a record which is set out in a plea are not averments in such plea. But in order that all the objects of the counsel in their liberal agreements may be fully attained, it will be supposed that this matter was all set forth in the plea in exactly the words it is alleged in the petition. The question then is, were the slaves, in this predicament, the property of John Manier the elder, in the sense of these words in the attachment? It is plain that if they, having been his property, were sold and transferred with the fraudulent intent to cheat, hinder, and delay his creditors, they did in some sense remain his property. That the property thus situated is the property of the fraudulent vendor in the sense of the terms of the writ of fieri facias against the estate, is unquestionable.

In such case the judgment creditor is allowed fictitiously to allege that no sale of such property has been made—in other words, that the sale was void and on this hypothesis a sale of it under execution will pass the title: the sheriff is therefore bound to seize and sell it as the property of the defendant. But such is not the rule in the case of this sort of attachment. It is a process before judgment, and such was never the effect of such process, whatever was its particular purpose—and the reason is that the term creditor in the rule of the common law and in the statutes which declare void donations, sales, and other transfers of property to the prejudice of creditors, signifies judgment creditors.

The sheriff was not authorized to seize such property on the ordinary mesne process of attachment prescribed by the common law. It was for the purpose of compelling the appearance of a defendant in order that the plaintiff might obtain a judgment; and the same was the rule in the execution of the mesne process of attachment prescribed by the former statute law of Kentucky. It was provided by this law, an act of 1797, that when the sheriff returned the writ to answer any civil action that the defendant was "not found," the plaintiff might have an alias, or, at his election, sue out an attachment against his estate, and if the sheriff returned that he had attached any goods of the defendant, the plaintiff should be entitled to judgment. Here the object was not exactly to compel the appearance of the defendant, but to warn him to appear and defend the action. It had been before concluded that an appearance of the defendant was not indispensable, and the execution of the attachment of his property having been substituted for the personal service of the citation, it entitled the plaintiff to judgment and in personam. Now, it was the settled rule in such cases that the return of the marshal must be positive that the goods attached were the property of the defendant. It never was imagined that under this law the sheriff could assume that the goods the defendant had transferred by donation or otherwise to the prejudice of his creditors, was still his property and that he could by its seizure entitle the plaintiff to such a judgment against an absent defendant.

There was in this case, it is true, a peculiar reason for confining the sheriff to the seizure of the property owned and claimed by the defendant. It is the disturbance of such property only the defendant is presumed to notice. But this reason was only accidental. The essential foundation of the rule in every species of this class of process is that no one but the judgment creditor has any right to question the validity of such transfers of property, and therefore no party in directing, nor any offi-

cer in the execution, of process prior to judgment, can assume that such sales and transfers are null and void. The attachment in this case is not in all respects the same with the two we have mentioned, but it is a process before judgment. It is a provisional remedy allowed to secure effects to satisfy a judgment expected to be thereafter recovered, and is therefore within the principle stated. There is a judgment for $25, recovered for costs for the continuance of the action for the debt in the Fayette circuit court, mentioned in the petition; but there had been no execution issued thereon and returned "No property found," as required by the Code to entitle the creditor to maintain such suit, and have such process, in another court; and it is not supposed the sum was sufficient to give such court jurisdiction: therefore it is not supposed this matter was any portion of the grounds on which the attachment was ordered; nor that it having been inserted in the petition, had any influence on the effect of the process.

13. "Defendant's property," in the Code: But this particular writ and proceeding was allowed and directed by a new law, and we must ascertain whether in its provisions there has been any alteration made in the general rules which have determined the effect of such process. It is allowed in every civil action, whether in equity or at common law, in eight several cases, and may be had either at the commencement of the suit or at any time before judgment. It is not intended as a substitute for personal or constructive notice. We have seen that the law required the defendant to be summoned personally, or constructively warned to appear exactly as if no such process had issued. But its object is for the satisfaction of a judgment when obtained and to this end it directs the sheriff to attach an amount of the property of the defendant, or sufficient for this purpose, and authorizes the seizure in one mode or another of every species of effects movable or immovable, corporeal or incorporeal, in possession, expectancy, or in action, not exempt by law from execution. It will not be necessary to state the several directions for the execution of the process, or the proceedings upon it, because none of them has the slightest appearance of a departure from the principles mentioned except one. It declares that "an order of attachment binds the defendant's property in the county, which might be seized under an execution against him, from the time of the delivery of the order to the sheriff; and the lien of the plaintiff is completed upon any property or demand of the defendant by executing the order upon it in the manner directed in this article." Section 223. And it might be at first supposed that the object here was first to declare in what category or predicament of the property, in what mode of its relative ownership, in respect to the parties, it was subject to this process of attachment and to establish for the rule, that wherever it was in a condition of relative ownership which rendered it subject to seizure under a fieri facias on a judgment against a defendant, it was subject to the attachment against his property. But a very brief examination of the words and the context of the law will show that the purpose was altogether different. It had been just before declared that where there were several attachments against the same person they should be levied according to the order in which they had come to the hands of the sheriff and thereupon directions had been given how the seizure should be made of every species of property, effects, and demands. It was then intended—it appears—to recognize the established principle that every attachment had its effect upon the property attached from the date it was seized, and to make this the general rule. But it was designed that one class of property, consisting of goods and lands wherein the defendant had certain legal estate, and other such property within the county, should be affected and bound from the time the sheriff received the process which commanded him to make the seizure—wherefore, in order to define this class of property without a tedious enumeration of the articles or other such inconvenient mode, it was declared that the attachment should bind such property of the defendant as might be seized and sold under execution from the day the sheriff received the process. In other words that the seizure, whenever made, should relate back to that day as in case of the execution. The object, it is manifest, was not to define the property nor the predicament of the property which was subject to be seized under the attachment, but merely to define the property which when attached was to be bound from the day when the sheriff first received the writ: and might have made the seizure. There is in fact no ambiguity in the enactment. But if it were subject to two constructions, it is an axiom that an ancient and well-established rule is not abrogated by adopting a doubtful construction of a new enactment which is not necessary to accomplish the manifest object of the law; and here there is no such necessity.

This Code of Practice provides a mode most facile in which the creditor in such cases may recover his debt and have his money levied with the greatest celerity, without at all departing from the rule in question. In his "ordinary" or common-law action against his debtor he is allowed, when necessary, to make defendants all the fraudulent vendees of his debtor's property, together with the debtors of his debtor; and thereupon have his injunction, attachment, or provisional seizure; and having thus had his debts secured by bonds for the forthcoming of the property or the delivery of it to a receiver of the court, he may

proceed in the same time to prepare for the trial of his principal and all the incidental actions, bring them all on for trial at once, thereupon have both a judgment for his debt and an order for it to be levied or paid out of the attached objects. It might even happen that the court having in the meantime had the attached property sold by the receiver and its proceeds brought into court, the creditor would receive his money the same hour the judgment was recorded. Now there is certainly nothing in these provisions which favors the supposition that it was intended to alter the common law which had determined the effect of such an attachment or to afford an apology for an officer's seizing property not within the terms of the writ. The plaintiff has a right, on a proper case, to have an order for process against the property of any defendants, for the conservation of the specific or determinate objects of property he seeks to subject to his demand.

These plaintiffs might have had an order enjoining John Manier, Jr., from selling or removing these slaves, with the requirement of a bond for the observance of the injunction, and an order that if such bond should not be given that the slaves should be seized and consigned to a receiver of the court. But they took an order for an attachment of the property of their debtor only, and which gave the sheriff no authority to seize the slaves sought to be subjected unless they were his property. But it was alleged—and it is now supposed and averred in this plea—that these slaves were his property, except that they had been sold and transferred, with intent to delay and defraud his creditors, to John Manier, the younger. But on this fact they were—as between the two parties—exactly as much the property of the younger Manier as if they had been born his property. No one had a right to question the validity of such sale but a judgment creditor. And there was no judgment. It follows that the seizure of them by the sheriff was not commanded by the attachment, and therefore did not carry the property into the custody of the court.

14. Rights affected by an action: But was the property otherwise so situated as to be exempt from the jurisdiction of this court? The suit in the state court was among other things to set aside a sale of the property by one defendant to the other, and to subject it to the demand of the plaintiff against the vendor. But the plaintiff in the action here was no party to that suit and therefore cannot be affected by its pendency, nor by any judgment that may be rendered in it, unless he derived his title to the property from one of the parties subsequent to the institution of that suit; and no such deduction of title is alleged. The plaintiff stands here affirming that he was himself the owner of the property, and complaining that it was wrongfully taken from him without the authority of any process of that action, demands his remedy. Has the court jurisdiction? or must it refer him to the court where these other persons are in controversy about their rights in or upon the property between themselves on grounds which it does not appear in any wise involve either him or his title? The statement of the question ought to be sufficient to suggest the answer.

15. Intervention and opposition, elective: The plaintiff had, no doubt, the right to go into the Clarke circuit court and there on his "Third Person's Opposition" to the seizure and detention of his property under color of its process ask its surrender; or by intervention in the controversy there pending in respect to it, have its title established against the parties to that action. But had he not his election to bring his action elsewhere? The owner is not necessitated to intervene in an action between other persons concerning his property, but may institute his own action elsewhere against any of the parties who had taken or detained it from him, and on recovering a judgment have it specifically executed immediately, unless the property be in the custody of the other court—and in such case he may rest on his judgment until the determination of such suit: when if a defendant to his judgment shall have prevailed and obtained, or been restored to the possession, he may have the specific execution. This of course he might not be able to do if a party against whom he had not obtained such judgment prevailed; and in such case it might be necessary for the owner to commence a new action—hence the convenience of the intervention.

But here the defendant was no party to any such suit, nor was the property in the custody of any court. This is the whole case: The plaintiff's slaves were sold by one man to another; a third party, alleging this sale was fraudulent as to him, brought his action against the vendor and vendee, did not obtain an attachment against the slaves but against the property of the vendor: under this process the slaves were seized and detained by the sheriff. Was his only remedy by appearing in a court which had no custody of his property, and there opposing the wrongful actions of its officers, or intervening in a cause where his rights were not in litigation? He had his election, and this court has jurisdiction. The demurrer is sustained. The defendant may answer over.

---

MATSON (BLOOMER v.). See Case No. 18,-242.

MERCHANT SERVICE — CHARGE TO GRAND JURY IN RELATION TO THE MERCHANT SERVICE. See Case No. 18,249.

MILLIGAN (BLOOMER v.). See Case No. 18,242.

MILLS, BELKNAP (CROMPTON v.). See Case No. 18,285.

MOREHOUSE (ARCHER v.). See Case No. 18,225.